UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CAMERON M.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 1:21-cv-2544-MG-SEB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) |
| | ) |
| *Defendant*. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In April 2019, Plaintiff Cameron M. applied for applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA"), alleging a disability onset date of February 16, 2019. [Filing No. 7-5 at 2-8.] His applications were initially denied on July 3, 2019, [Filing No. 7-3 at 2-16], and upon reconsideration on September 3, 2019, [Filing No. 7-3 at 18-31]. Administrative Law Judge Deanna Sokolski (the "ALJ") conducted a hearing on December 17, 2020. [Filing No. 7-2 at 33-79.] The ALJ issued a decision on March 5, 2021, concluding that Cameron M. was not entitled to receive benefits. [Filing No. 7-2 at 13-28.] The Appeals Council denied review on August 2, 2021. On September 29, 2021, Cameron M. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 14.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Cameron M. benefits.

## I.
### STANDARD OF REVIEW[2]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[2] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Cameron M. was 58 years old on February 16, 2019—the date of his alleged onset of disability. [Filing No. 7-3 at 2; 18.] He has at least a high school education and has past work experience as a medical records clerk, medical records specialist, and meat clerk. [Filing No. 7-2 at 43; Filing No. 7-3 at 14-15; 30-31.] Cameron M.'s original application alleges that he can no longer work because he has lumbar spondylosis, Grade 1 anterolisthesis of L5, mild acute interstitial pancreatitis, hypertension, hypercholesterolemia, tingling in extremities, cervical spondylosis with myelopathy, lumbar degenerative disc disease, diabetes, and depression. [Filing No. 7-3 at 3; 19.] Following the February 24, 2021 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Cameron M. was not disabled. [Filing No. 7-2 at 14.] Specifically, the ALJ found as follows:

- At Step One, Cameron M. had not engaged in substantial gainful activity[3] from February 16, 2019 (the alleged onset date), through his date last insured of December 31, 2020. [Filing No. 7-2 at 19.]

- At Step Two, Cameron M. "has the following severe impairments: spondylarthosis, degenerative disc disease of lumbar spine, degenerative disc disease of cervical

---

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- spine, radiculopathy, bilateral sacroiliac joint arthritis, and obesity." [Filing No. 7-2 at 19.]

- At Step Three, Cameron M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-2 at 21.] The ALJ specifically considered Listings 1.02 (Major Dysfunction of a Joint(s)) and 1.04 (Disorders of the Spine)[4]. [Filing No. 7-2 at 21.]

- After Step Three but before Step Four, Cameron M. had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl and he must avoid all exposure to work place hazards such as unprotected heights and dangerous moving machinery." [Filing No. 7-2 at 22.]

- At Step Four, Cameron M. could perform past relevant work as a medical records clerk and as a general office clerk, through the date last insured. [Filing No. 7-2 at 26.]

- The ALJ did not proceed to Step Five.

### III.
### DISCUSSION

Cameron M. argues that: (1) the ALJ's conclusion that Cameron M.'s depression and anxiety were non-severe impairments at Step Two, requiring no additional mental limitations is wrong; (2) the ALJ did not properly evaluate the medical opinion of Dr. Melissa Sprinkle, Psy.D.; (3) the ALJ's subjective symptom analysis did not comply with SSR 16-3p; and (4) the RFC (and corresponding hypothetical to the VE) is not supported by substantial evidence.

  **A.**  **Mental RFC and Dr. Sprinkle's Opinion**

Cameron M. argues that the ALJ's erred in her conclusion that Cameron M.'s depression and anxiety were non-severe impairments at Step Two, requiring no additional mental limitations.

---

[4] Regulations relating to Listing 1.04 were subsequently revised effective April 2, 2021. As a result, Listing 1.04A no longer exists and was replaced by Listings 1.15 and 1.16 for spinal and nerve root disorders.

5

[Filing No. 10 at 21.] Cameron M. argues that the ALJ's conclusions fail to account for the limitations in consultative examiner Dr. Sprinkle's opinion. [Filing No. 10 at 21-22.]

The Commissioner argues that at Step Two, the ALJ reasonably found that Cameron M.'s mental impairments were not severe. [Filing No. 12 at 10.] The Commissioner contends the ALJ properly evaluated Dr. Sprinkle's opinion to find the overall record evidence does not support several of her opined limitations. [Filing No. 12 at 10-11.] The Commissioner argues that the ALJ found Dr. Sprinkle's opinion partially persuasive, explaining that while Cameron M. may have mild limitations with memory, his records for June and September 2020 suggest his mental impairments were not severe because of improvement in symptoms from medication and treatment, and that his mental status examinations were relatively normal. [Filing No. 12 at 11.] Further, the Commissioner cites the opinions of state agency psychologists Drs. Lovko and Larsen, who reviewed the record which included Dr. Sprinkle's opinion, and found Cameron M.'s mental impairments were not severe. [Filing No. 12 at 12 (citing Filing No. 7-2 at 26).] Lastly, the Commissioner contends that Cameron M. does not present the Court with any specific work-related functional limitations that he believes the ALJ should have included. [Filing No. 12 at 12.]

Because Cameron M. filed for benefits after March 27, 2017, 20 C.F.R. § 416.920c provides the framework for the ALJ's evaluation of medical source opinions. Under this framework, ALJs will evaluate all medical source opinions using the following factors: supportability, consistency, relationship with the claimant, specialization, and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(c). The opinion of a claimant's treating physician no longer receives controlling weight. 20 C.F.R. § 416.920c(a). "Instead, the most important factors are a medical opinion's supportability and consistency with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022) (internal quotation

marks omitted). These are the factors that the ALJ must explicitly discuss, whereas the ALJ need only consider the other factors. 20 C.F.R. § 416.920c(b).

For a medical opinion to be supportable, it must be based on "the objective medical evidence and supporting explanations." 20 C.F.R. § 416.920c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §416.920c(c)(1). Similarly, for an opinion to be consistent, it must be, reductively, consistent with the record. 20 C.F.R. § 416.920c(c)(1). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

Focusing on the required factors of supportability and consistency, the ALJ provided sufficient support for the conclusion that Dr. Sprinkle's opinion is only partially persuasive. The ALJ found Dr. Sprinkle's opinion partially persuasive, noting that on exam, Cameron M. showed only mild limitations with memory. [Filing No. 7-2 at 25.] The ALJ summarized the record, including Dr. Sprinkle's notes, demonstrating inconsistencies between Dr. Sprinkle's opinion about Cameron M.'s limitations and her observations and Cameron M.'s reported activities. [*See* Filing No. 7-2 at 25.] *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) (noting that courts read the ALJ's decision as a whole and with common sense). Cameron M. points to treatment notes where Dr. Sprinkle found Cameron M. would require supervision, assistance and redirection when learning new tasks and concepts, perform best in routine, simple or manual laboring jobs, and his psychiatric symptoms would impact his ability to perform daily and work

activities significantly. [Filing No. 10 at 4, 22-23.] However, this argument is not well developed and ignores the ALJ's statement that "treatment notes do show fluctuating self-reports of anxiety, stress, and feeling overwhelmed." [Filing No. 7-2 at 24-25.] Further, state agency psychologists Drs. Lovko and Larsen reviewed the record, which included Dr. Sprinkle's opinion, and found Cameron M.'s mental impairments were not severe. [Filing No. 7-2 at 26.]

In sum, the ALJ considered both the consistency and supportability of Dr. Sprinkle's opinion with the medical record as a whole and articulated her reasons for finding the opinion only partially persuasive. The Court does not find remand warranted on this issue.

B.     **Subjective Symptom Analysis**

Cameron M. next argues that the ALJ discredited his testimony about his subjective symptoms for impermissible reasons. [Filing No. 10 at 14-15.] He argues that the ALJ failed to adequately support her conclusion that Cameron M.'s statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence. [Filing No. 10 at 15.] Cameron M. takes issue with the ALJ's citation to record evidence that Cameron M. showed good range of motion in his cervical, thoracic, and lumbar spines. [Filing No. 10 at 15.] He argues that the ALJ should have explored examination notes regarding his decreased range of motion throughout his lumbar spine and bilateral hips, which conflict with the ALJ's finding. [Filing No. 10 at 15.] Further, Cameron M. argues the ALJ's finding that Cameron M.'s "treatment has been essentially routine and conservative in nature" cannot support the subjective symptom finding. [Filing No. 10 at 18.] He contends that the record belies the ALJ's finding that his treatment was conservative by pointing to evidence that he received injections as treatment. [Filing No. 10 at 19.] He says the ALJ should have explored evidence of injection and surgery recommendations by his treating physicians, and extenuating

circumstances that rendered these options not yet feasible at the time of the hearing. [Filing No. 10 at 19.] Lastly, Cameron M. contends the ALJ's decision cites to two alleged documents of self-reported pain assessments indicating improvement, but the citations were to incorrect pages of the transcript. [Filing No. 10 at 16.]

The Commissioner responds that the ALJ's subjective-symptom analysis was thorough enough to satisfy the 16-3p requirements. [Filing No. 12 at 6.] First, the Commissioner contends the ALJ fully considered the medical expert opinions. The Commissioner argues the ALJ considered Cameron M.'s June 2019 consultative examination with Dr. Malola, which showed some limitations, but ultimately good spinal range of motion and normal posture and gait. [Filing No. 12 at 6.] The Commissioner contends the ALJ considered that the two state-agency physicians opinions included review of Cameron M.'s exam with Dr. Malola and found that he could do a full range of light work with occasional postural limitations—which were less restrictive than the ALJ found. [Filing No. 12 at 6.] The Commissioner argues the ALJ found these state-agency physicians' opinions were supported by evidence showing Cameron M. had range of motion limitations in his spine, extremities, and mild to moderate degenerative changes, but the ALJ added environmental restrictions to accommodate these limitations. [Filing No. 12 at 6-7.] Further, the Commissioner contends that no doctor found Cameron M. more limited than the ALJ found regarding his spinal range of motion limitations. [Filing No. 12 at 7.] Second, the Commissioner argues the ALJ also explained that treatment records in 2020 showed Cameron M. was not as limited as he claimed, citing that he reported physical therapy helped with mobility, and that while he complained of lower back pain, he reported better functioning. [Filing No. 12 at 7-8.] The Commissioner argues the ALJ's citation to February and March 2020 treatment notes contained a mere clerical error to the location in the record, which does not warrant remand. [Filing No. 12 at 8.] Additionally, the

9

Commissioner contends the ALJ considered imaging showing only mild to moderate degenerative changes in Cameron M.'s lumbar spine. [Filing No. 12 at 8.] And third, the Commissioner contends the ALJ permissibly considered all the factors in SSR 16-3p, including his daily activities, the location, duration, frequency, and intensity of pain, and precipitating and aggravating factors, his medication, treatment, and other measures to alleviate pain, and that he did not use an assistive device, took Tylenol for his pain, and had improved mobility with physical therapy while still having pain. [Filing No. 12 at 9-10.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, the ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

SSR 16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2017 WL 5180304, at *1. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process and clarifies that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3.

If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ must consider all the evidence in the record to evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

*Id.* at *4. When assessing credibility of a claimant's symptom testimony, the ALJ also considers the factors set forth in 20 C.F.R. § 416.929(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *Id.*

Ultimately, the ALJ must explain the subjective symptom analysis "in such a way that allows [a court] to determine whether [the ALJ] reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (internal quotations omitted). And, "[n]ot all of the ALJ's reasons must be

11

valid," to uphold a subjective symptom finding, "as long as enough of them are." *Halsell v. Astrue, 357 F. App'x 717, 722 (7th Cir. 2009).*

At his hearing, Cameron M. testified that it hurt to move around, is unable to bend or walk properly, walks with a cane, and that pain is constant even with medication. [Filing No. 7-2 at 53.] He reported that his doctors prescribed surgery, but when due for surgery, he is sent to physical therapy, and following COVID-19, his therapy was cancelled. [Filing No. 7-2 at 53-54.] Regarding his ability to walk, he stated that he can walk half a block, and that he can only stand for 10 minutes at a time, and that the most he could sit at a time is about 20 minutes. [Filing No. 7-2 at 56.] He testified that in terms of treatment, he takes medication (hydrocodone, acetaminophen with codeine, amlodipine, olopatadine, tetrazolo for psychotic, bupropion, lisinopril, and metformin for diabetes) and goes to physical therapy and uses a cane when he leaves his home. [Filing No. 7-2 at 56-57.] During the November 2019 hearing, he testified that he becomes short of breath when he attempts to complete daily tasks, like showering and dressing. [Filing No. 7-2 at 59.]

At step one, the ALJ found that Cameron M.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms." [Filing No. 7-2 at 23.] However, at step two, Cameron M.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [Filing No. 7-2 at 23.] The ALJ provided the following reasons to support this finding at step two.

> As for the claimant's statements about the intensity, persistence, and limiting effects of their symptoms, they are inconsistent because the objective medical evidence does not support the severity of the limitations as alleged at the hearing. His physical exam with a consultative examiner showed normal posture and gait but it also demonstrated that he was dragging his left foot (Ex. B6F). He had weakness in the left quadriceps muscles but he was not using an assistive device and he was able to balance himself with the help of his right leg (Ex. B6F). He could climb on and off the examination table, sit and lie on the exam table (Ex. B6F). The exam

showed good range of motion in his cervical, thoracic and lumbar spines (Ex. B6F). Straight leg raising was abnormal but strength in all major muscle groups was 5/5 (Ex. B6F). He could stand on his heels and toes and his coordination was normal (Ex. B6F). Dr. Merlyn Malola concluded that the physical exam was normal (Ex. B6F). She diagnosed low back pain with radiculopathy, bilateral sacroiliac joint arthritis, bilateral hip pain, depression, anxiety, chronic pancreatitis, cholecystitis, hypertension, NIDDM, mild COPD, and cyst on right hand (Ex. B6F).

Treatment records from 2020 do not support his inability to work at less than a light exertional level as well. Specifically, the records show that the claimant complained of low back pain radiating into his left leg and he reported the pain as constant but he reported no physical therapy, injections or chiropractic treatment (Ex. B13F/16). He was not using an assistive device and he reported taking Tylenol for his pain (Ex. B13F/16). Moreover, the exam at that time showed normal range of motion of his back and normal back and his straight leg raise was negative (Ex. B13F/18). His gait and sensation was normal but he had significant back pain when going from flexion to extension (Ex. B13F/18). An MRI of the lumbar spine showed bilateral L5 spondylolysis and likely compression of the exiting bilateral L5 nerves and otherwise mild degenerative changes (Ex. B13F/13). Cervical imaging studies showed mild to moderate changes (Ex. B17F/13). Once the claimant attended physical therapy sessions, he reported improvement in mobility but not in his pain (Ex. B13F/6). He continued to complain of low back pain but reported better function (Ex. B15F/6). His self-reported pain assessment improved from 6 out of 10 to 4 out of 10, when comparing his records in February and March 2020 (Ex. B13F/3, 9).

Although the records show the subjective complaints of the pain in the low back radiating into the lower extremities, his testimony of an inability to sit longer than 20 minutes or walk for only half a block is not corroborated. His physical exams showed back pain when going from flexion to extension but they demonstrated normal ranges of motion, gait, sensation and strength (Ex. B13F/16, 18). The claimant reported improvement in mobility and function with physical therapy but he continued to report no change in his pain, for which he was taking Tylenol (Ex. B13F/6, B15F/6). The claimant's treatment has been essentially routine and conservative in nature.

* * *

At the initial level of review, the consultants opined that the claimant was capable of performing light work but could never climb ladders, ropes, or scaffolds but could occasionally climb ramps and stairs, balance, kneel, crouch, and crawl and he could frequently stoop (Ex. B1A). At the reconsideration level, the consultants affirmed the exertional level of light work but opined that the claimant could perform all postural activities at occasional level (Ex. B3A).

13

> The undersigned found the opinions somewhat persuasive, as the consultants supported their opinion with a detailed explanation of the evidence that showed the claimant's ability to perform light work was limited due to his limited range of motion in the lumbar spine, weak lower extremity, and the studies showing mild to moderate degenerative changes (B1A, B13F/13). However, the undersigned added environmental restrictions, based on the claimant's treatment notes showing continued radiculopathy and lower back pain (Ex. B13F/6).

[Filing No. 7-2 at 22-24.] In other words, the ALJ's assessment was that: (1) medical findings did not support the limitations to which Cameron M. testified; (2) Cameron M. had only received limited or conservative treatment for his conditions; and (3) Cameron M.'s symptoms had improved.

### 1. Medical Findings

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *5. However, an ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." Id. "In evaluating an individual's symptoms, it is not sufficient for [an ALJ] to make a single, conclusory statement … that [the allegations are (or are not) supported or consistent.'" Id.

Here, The ALJ found that "objective evidence does not support the severity of the limitations as alleged at the hearing." [Filing No. 7-2 at 23.] The ALJ then summarized Cameron M.'s physical exam with a consultative examiner Dr. Malola. [Filing No. 7-2 at 23.] The ALJ noted normal posture and gain, he was dragging his left foot, had weakness in his quadriceps but was not using an assistive device and was able to balance himself, he had a good range of motion in his cervical, thoracic and lumbar spines, his straight leg raising was abnormal, he could stand on heels

14

and toes and his coordination was normal. [Filing No. 7-2 at 23.] Further, the ALJ detailed the opinion evidence of state agency consultants, who opined that Cameron M. had an ability to perform light work and had limited range of motion in the lumbar spine, weak lower extremities, and mild to moderate degenerative changes. [Filing No.7-2 at 25.]

A "summary is not analysis, as it does not explain *why* the evidence summarized undermined [claimant's] statements about his symptoms or limitations, or which statements were inconsistent." *Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6, 2021) (emphasis in original) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)). *See also Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018) (remanding because the "[t]he ALJ did not really explain, for example, why he did not believe [claimant's] testimony that he could not walk more than a very short distance and had to lie down several times during the day to manage his pain.")

However, the ALJ did not merely summarize the findings. In evaluating Cameron M.'s alleged symptoms, she noted inconsistencies with his statements and the physical exams, detailing that while he showed back pain, he also demonstrated normal ranges of motion, gait, sensation and strength. [Filing No. 7-2 at 24.] Further, while the ALJ found the opinions of the state agency consultants somewhat persuasive, she added in additional environmental restrictions based on Cameron M.'s treatment notes showing continued lower back pain.

Without this explanation, the ALJ created a bridge between the evidence the ALJ's subjective symptom finding.

### 2. Limited or Conservative Treatment

The nature and frequency of treatment sought be a claimant is an appropriate consideration. *See, e.g.*, 20 C.F.R. § 416.929(c)(3); *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (affirming ALJ's assessment where record showed "little in the way of actual treatment"). SSR 16-

3p does not require ALJs to ask a claimant about his or her failure to seek treatment, rather, "[t]hat rule provides that an ALJ must *consider* possible reasons for a failure to seek treatment." *Deborah M.*, 994 F.3d at 790 (emphasis added). "An ALJ can, by and large, discount a claimant's testimony in light of routine and conservative treatment, so long as the ALJ does not unreasonably minimize the extent of the claimant's treatment, play doctor, or make assumptions about the claimant's failure to seek treatment without asking the claimant about the reasons for noncompliance." *Annette S. v. Saul*, 2021 WL 1946342, at *12 (N.D. Ill. May 14, 2021).

Cameron M. contends that the ALJ ignored the fact that injections and surgery have been recommended by treating physicians, though these options were not feasible at the time of the hearing or decision. [Filing No. 10 at 19 (citing Filing No. 7-8 at 7, 54, 72, 87).] He further argues he reported to the ALJ of a history of injections in his lower back. [Filing No. 10 at 19 (citing Filing No. 7-8 at 79).]

Here, the ALJ asked Cameron M. during the hearing about treatments he was receiving, such as injections. [Filing No. 7-2 at 56.] Cameron M. noted that he received "pain pills and physical therapy." [Filing No. 7-2 at 56.] The ALJ then asked of any other forms of pain relief, apart from medication he used, to which Cameron M. said he would go to physical therapy and receive massages with a gel called "Ice" from his wife. [Filing No. 7-2 at 58.] The ALJ noted that from treatment records from 2020, "the claimant complained of low back pain radiating into his left leg and he reported the pain as constant but he reported no physical therapy, injections or chiropractic treatment." [Filing No. 7-2 at 23.]

While the ALJ concluded that Cameron M.'s records reflected only conservative treatment, this conclusion was not made by any doctor in the record. Moreover, while Cameron M. did not have surgery during the relevant period, the record evidence indicates injections were

recommended and discussed by physicians, [Filing No. 7-8 at 7, 79, 87] and surgery was discussed at various times, [Filing No. 7-8 at 63, 79, 87, 101].

Courts within the Seventh Circuit have also questioned why treatment such as physical therapy and pain medication should be viewed as "conservative" without a medical source reaching such opinion or review of other possible explanations behind supposedly limited treatment. *See, e.g., Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) ("We are not confident that the ALJ would have reached the same conclusion about Hill's credibility had she not inappropriately 'played doctor,' ignored possible explanations for Hill's conservative treatment, and conflated a desire to work with an ability to do so.").

However, the harmless error standard applies to judicial review of administrative decisions, and "we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Zero Zone, Inc. v. United States Dep't of Energy*, 832 F.3d 654, 682 (7th Cir. 2016). In assessing whether an error is harmless, we examine the record to determine whether we can "predict with great confidence what the result of remand will be." *McKinzey,* 641 F.3d at 892. Here, Cameron M. argues only that the ALJ failed to acknowledge record evidence of recommendations for injections and surgery. But Cameron M. makes no argument that this evidence contradicted the ALJ's ultimate RFC determination. Due to the record indicating injections and surgery were discussed with Cameron M., the ALJ should have confronted possible explanations for why more drastic treatment was not sought or any limiting factors for noncompliance with these recommendations, but because Cameron M. merely alleges the pro forma error of failing to recite in the analysis the record evidence of recommended injections and surgery, this Court can predict with confidence the result of remand would be, and accordingly any alleged error would be harmless. See *Id.* at

17

892 (holding that the ALJ's oversight in failing to consider a state agency physician's opinion was harmless error because we can say with great confidence that the ALJ would reach the same result on remand); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time").

### 3. Improvement with Treatment

The ALJ also cited Cameron M.'s symptom improvement with treatment as a basis for discounting his reported symptoms. [Filing No. 7-2 at 23.] Cameron M.'s sole argument in this respect is that the ALJ's reference was to pages of the transcript that did not correlate to the decision. [Filing No. 10 at 16.]

The ALJ cited evidence from March 2020 that Cameron M. reported physical therapy helped with mobility but observed that his pain was still present (7/10 sitting and 10/10 when active). [Filing No. 7-2 at 23.] The ALJ then explained that while Cameron M. complained of continued lower back pain, he reported better functioning and could do leg exercises without pain. [Filing No. 7-2 at 23.] The ALJ further evidenced reported pain levels decreasing—noting 6/10 in February 2020, but in March 2020 a pain of 4/10 at best. [Filing No. 7-2 at 23.]

While the ALJ's citation was to "Ex. B13F/3,9", the treatment notes were at B15F/3, 9. This appears to the Court as nothing more than a clerical error and not requiring remand.

\* \* \*

In summary, the ALJ's subjective symptom analysis is not defective for the reasons cited above. Therefore, remand is not warranted on this issue.

### C. Hypotheticals

Cameron M. advances an additional argument that because the RFC is defective, the hypotheticals posed to the VE failed to capture of all his documented limitations. [*See* Filing No. 10 at 24-25.]

ALJs must provide VEs with a complete picture of a claimant's residual functional capacity. *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011). The hypothetical question posed to a VE need not include every physical limitation of a claimant, provided that the VE had the opportunity to learn of the claimant's limitations through, for example, an independent review of the medical records or through other questioning at the hearing. *See Young*, 362 F.3d at 1003. However, if the hypothetical posed to the VE does not include all the claimant's limitations, there must be some amount of evidence in the record indicating that the VE knew the extent of the claimant's limitations. *Id.* We require the VE to know about a claimant's limitations so that the VE does not refer to work that the claimant is not capable of undertaking. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). Further, the ALJ is only required to incorporate into her hypotheticals those impairments and limitations that she accepts as credible. *See Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007).

Though Cameron M. may have disagreed with the ALJ's RFC assessment, such determinations are reserved exclusively to the Commissioner, 20 C.F.R. § 404.1527(e), and there was substantial evidence to support the specific determination made by the ALJ in this case. The Court need not address this argument further, because it has found the RFC is not defective as opined by the ALJ.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Cameron M. benefits. Final judgment will issue by separate entry.

Date: 9/30/2022

_____
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**<u>Distribution via ECF to all counsel of record.</u>**